UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

ROBERT C. BASS,

                                         Plaintiff,

                     -against-

PERSHING, PERSHING LLC & BNY
PERSHING, BANK OF NEW YORK, N.A.
("BNY"), CITIGROUP GLOBAL MARKETS
INC. ("CGMI"), AND FINANCIAL INDUSTRY
REGULATORY AUTHORITY ("FINRA"),

                                   Defendants.

-------------------------------------------------------------X

25-CV-02478 (VEC)

<u>OPINION AND ORDER</u>

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:   11/25/2025

VALERIE CAPRONI, United States District Judge:

Mr. Robert C. Bass ("Plaintiff"), proceeding *pro se*, alleges that Pershing LLC and BNY Mellon, N.A. (collectively, the "BNY Defendants"), Citigroup Global Markets Inc. ("CGMI"), and the Financial Industry Regulatory Authority ("FINRA," and collectively with the BNY Defendants and CGMI, "Defendants") conspired to steal $1 billion that was allegedly sent from Deutsche Bank AG to Plaintiff's Citibank, N.A. ("Citi") brokerage account on or about May 9, 2019. *See* Am. Compl., Dkt. 69. According to the Amended Complaint, the $1 billion wire never arrived in Plaintiff's Citi account, as it was supposed to. *Id.* ¶ 11. This is because, according to Plaintiff, Defendants had jointly hatched a scheme to abscond with the funds and deposit them in a separate, clandestine Citi account with the purpose of using the $1 billion as "secured cash collateral[] towards issuance of the only [U.S.]-Denominated Green Bond," which would support the U.S. Environmental Protection Agency's "Greenhouse Gas Reduction Fund." *Id.* ¶¶ 104–110.

Each Defendant separately moved to dismiss. *See* Mot. to Dismiss, Dkt. 90 ("BNY Mot."); Mot. To Dismiss, Dkt. 86 ("CGMI Mot."); Mot. to Dismiss, Dkt. 84 ("FINRA Mot.," and collectively with the BNY Mot. and CGMI Mot., the "Motions to Dismiss" or "Motions"). The Motions to Dismiss the Amended Complaint are GRANTED WITH PREJUDICE.

## BACKGROUND[1]

The Court assumes the parties' familiarity with the background of this litigation and recites only the facts necessary to decide the Motions to Dismiss. Plaintiff filed the Amended Complaint on June 24, 2025, alleging that, on or about May 9, 2019, an unspecified individual caused a $1 billion wire to be sent from Deutsche Bank AG to Plaintiff's Citi brokerage account. Am. Compl. ¶¶ 89–95. The funds, however, never reached Plaintiff. *Id.* Plaintiff alleges that Defendants conspired to steal the funds, asserting that they were ultimately deposited into a separate Citi account and used to issue a "[U.S.]-Denominated Green Bond." *Id.* ¶¶ 104–110. Further still, Plaintiff alleges that the Defendants have refused to return funds on deposit in another Citi account belonging to Plaintiff. *Id.* ¶¶ 97–103.

The Amended Complaint is difficult to decipher. It appears that Plaintiff is seeking relief under various federal criminal statutes, including 18 U.S.C. § 1341 (Count I); 18 U.S.C. § 1343 (Count II); 18 U.S.C. § 1512 (Count III); 18 U.S.C. §§ 1956 and 1957 (Count V); 18 U.S.C. § 2320(a)(1) and (2) (Count VI); as well as under the Sixth Amendment to the United States Constitution (Count IV). *Id.* ¶¶ 119–135. The Amended Complaint also refers to the Racketeer Influenced and Corrupt Organizations ("RICO") Act, *see id.* ¶¶ 1–22, 111–118, 120, and Article

---

[1]    For purposes of deciding the Motions, the Court assumes the truth of well-pled factual allegations in the Amended Complaint. *See Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019).

4-A of the Uniform Commercial Code ("N.Y. U.C.C."),[2] *see id.* ¶¶ 3–13, 24–25, 34, 82, 110, 116. Plaintiff seeks the "[r]eturn of [his] absconded, legal and lawfully earned, non-criminal origin funds," treble damages, and other equitable relief. *Id.* ¶¶ 20, 22. Defendants moved to dismiss. BNY Mot., Dkt. 90; CGMI Mot., Dkt. 86; FINRA Mot., Dkt. 84.

This is not the first time that Plaintiff has sought redress for his allegedly stolen funds. In May 2023, Plaintiff commenced an arbitration against CGMI before a FINRA arbitration panel for essentially the same reason that he brings this lawsuit. *See* Am. Compl. ¶ 14. Plaintiff asked the arbitration panel for an award of $1 billion, plus interest and treble damages, against CGMI. Declaration of Nicholas J. Mazza ("Mazza Decl."), Ex. 2, Dkt. 91-2, at 2 (FINRA arbitration award).[3] Citi opposed. *Id.* In 2024, following discovery, substantial motion practice, and a two-day evidentiary hearing, the FINRA arbitrators determined that Plaintiff's proffered evidence was "not genuine," and his claim was meritless. *Id.* at 2–4. In June 2024, the FINRA panel dismissed Plaintiff's claim (with prejudice) and assessed $11,025 in fees against him. *Id.* at 6.

Four days after the FINRA panel issued its decision, Plaintiff filed a petition in this Court, separate from the instant action, to vacate the award. On March 11, 2025, the Court rejected Plaintiff's arguments and confirmed the arbitration award. *See Bass v. Citi Glob. Mkts., Inc.*, No. 24-CV-4586 (VEC), 2025 WL 785741 (S.D.N.Y. Mar. 11, 2025). Plaintiff appealed. On July 9, 2025, the Court of Appeals for the Second Circuit vacated this Court's order, determining that the Court lacked jurisdiction over Plaintiff's petition to vacate. *See Bass v. Citi Glob. Mkts., Inc.*, No. 25-589, 2025 WL 2613774 (2d Cir. July 9, 2025).

---

[2]    Although the Amended Complaint does not specify, the Court assumes that Plaintiff is referring to New York State's Uniform Commercial Code.

[3]    The BNY Defendants were identified in Plaintiff's Statement of Claim before the FINRA panel, but only CGMI was a named respondent. *See* Mazza Decl., Ex. 2, at 2.

**DISCUSSION**

I.    **Standard of Review**

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  At the motion to dismiss stage, the Court draws all reasonable inferences in the light most favorable to the plaintiff, *see Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013), while also "draw[ing] on its judicial experience and common sense," *Iqbal*, 556 U.S. at 679. Where, as here, the plaintiff is *pro se*, the Court must construe the Amended Complaint "liberally, reading it with special solicitude and interpreting it to raise the strongest claims that it suggests."  *J.S. v. T'Kach*, 714 F.3d 99, 103 (2d Cir. 2013) (quoting *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010)).  Still, *pro se* status does not insulate a party from compliance with relevant pleading rules and substantive law, *see Almazon v. JPMorgan Chase Bank, N.A.*, No. 19-CV-4871, 2020 WL 1151313, at *9 (S.D.N.Y. Mar. 9, 2020), and the Court is not required "to accept as true a legal conclusion couched as a factual allegation," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Nor must the Court accept as sufficient "[a] pleading that offers labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancements."  *Id.* (internal quotation marks and alterations omitted).

4

## II.     Plaintiff's Civil RICO Claims Must Be Dismissed.

The Amended Complaint includes a "Federal Civil RICO Statement" in which Plaintiff alleges that each Defendant "was and remains in violation of 18 U.S.C. §§ 1962(a), (b), (c), and (d)."  Am. Compl. ¶ 1.  While the Amended Complaint is far from a model of clarity, and the "Federal Civil RICO Statement" does not unambiguously articulate a claim pursuant to the civil RICO statute, 18 U.S.C. § 1962, the Court is "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).  Indeed, "however inartfully pleaded," the Amended Complaint "must be held to less stringent standards than formal pleadings drafted by lawyers."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted).  As such, and for the purposes of considering the Motions to Dismiss, the Court will proceed on the assumption that Plaintiff has endeavored to allege a civil RICO claim against Defendants.

Assuming that the Amended Complaint is trying to allege civil RICO violations, such claims fail for two independent reasons.  First, any civil RICO claim against CGMI and the BNY Defendants is barred by the applicable statute of limitations.  Second, even if the civil RICO claims were not time barred, they would be barred by the doctrine of *res judicata*.

### A.     Plaintiff's Civil RICO Claims are Time-Barred.[4]

Civil RICO actions are subject to a four-year statute of limitations.  *Azima v. Dechert LLP*, No. 22-CV-8728 (PGG) (JW), 2024 WL 4665106, at *12 (S.D.N.Y. Sept. 26, 2024) (citing *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987)).  The Second Circuit has adopted an "injury discovery" rule in RICO cases; "a plaintiff's action accrues

---

[4]     When deciding a motion to dismiss on statute of limitations grounds, a district court may take judicial notice of "media reports, state court complaints, and regulatory filings" as long as the judicial notice is not "for the truth of the matters asserted in them, but rather to establish that the matters [had] been publicly asserted." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 424 (2d Cir. 2008) (internal quotation marks omitted).  In the context of a civil RICO lawsuit, "it is proper to take judicial notice of the *fact* that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents, in deciding whether so-called 'storm warnings' were adequate to trigger inquiry notice." *Id.* at 425.

against a defendant for a specific injury on the date that plaintiff discovers or should have discovered that injury." *Bankers Tr. Co. v. Rhoades*, 859 F.2d 1096, 1103 (2d Cir. 1988). Thus, the "first step in the statute of limitations analysis is to determine when the [plaintiff] sustained the alleged injury for which [he] seek[s] redress." *In re Merrill Lynch Ltd. P'ship Litig.*, 154 F.3d 56, 59 (2d Cir. 1998). Then, the Court must "determine when [the plaintiff] discovered or should have discovered the injury and begin the four-year statute of limitations period at that point." *Id.*

Plaintiff alleges that the wire transfer serving as the basis of this lawsuit was initiated "on or about May 7th[,] 2019." Am. Compl. ¶ 14. Equally as saliently, Plaintiff was promptly aware that the funds were missing from his account: "[O]n or about May 7th [to] 10th," Plaintiff had already contacted the "Director of Cash Management" for the "Deposit Trust Clearing Corporation" who, according to Plaintiff, had approved and processed the $1 billion wire and promised Plaintiff that he would "find out what is going on here." *Id.* ¶ 94; *see also id.* ¶ 90. In the weeks following the alleged transfer, Plaintiff continued to liaise with his contact at the "Deposit Trust Clearing Corporation" to try and determine where his funds were. *See id.* ¶¶ 90–95.

The Amended Complaint establishes that the injury for which Plaintiff now seeks redress occurred – and was known to Plaintiff – in May 2019. Indeed, as is evidenced by his actions in the days following the alleged transfer, Plaintiff was aware of the injury (*i.e.*, the lack of receipt of the funds) almost instantaneously. Even if one were to accept that Plaintiff needed a few days or weeks (or even months) to ensure that the missing funds were not the result of some technical snafu, at the latest the four-year statute of limitations period applicable to Plaintiff's RICO

6

claims began in mid-2019.  Plaintiff did not bring this action until March 26, 2025, nearly six years later.  As such, Plaintiff's RICO claims are untimely.

Plaintiff's allegation that the "actual discovered date of incurred personal injuries and domestic injury to his business was not factually discovered until May of 2023/2024," Am. Compl. ¶ 112, does not save his claims.  As the BNY Defendants aptly note in their briefing, this argument is contradicted by several other allegations in the Amended Complaint.  *See* BNY Mem., Dkt. 92, at 14–15; Am. Compl. ¶¶ 15 (discussing the financial impact of the alleged injury occurring as early as 2020), 16–17 (alleging that Defendants' actions caused Plaintiff to lose business worth billions of dollars in 2019 or 2020).  Even if Plaintiff remained ignorant of the full extent of the alleged conspiracy until more recently, the Court's analysis would remain unchanged.  "The RICO statute of limitations . . . runs even where the full extent of the RICO scheme is not discovered until a later date, so long as there were 'storm warnings' that should have prompted an inquiry."  *Koch v. Christie's Int'l PLC*, 785 F. Supp. 2d 105, 114 (S.D.N.Y. 2011) (quoting *World Wrestling Ent., Inc. v. Jakks Pac., Inc.*, 328 F. App'x 695, 697 (2d Cir. 2009)).[5]  The unexpected loss of $1 billion would surely be sufficient to, and according to Plaintiff did, induce an inquiry on Plaintiff's part.  Plaintiff's lawsuit should have followed within four years of his realization in mid-2019 that his funds were missing.  Because

---

[5]      Plaintiff's argument that "[d]iscovery of [the BNY Defendants'] involvement and conspiracy was not discovered, known and verified" until the FINRA arbitration in 2024, Am. Compl. ¶ 113, fails for similar reasons. First, that claim is contradicted by other allegations in the Amended Complaint that make clear that Plaintiff was on notice of the BNY Defendants' purported involvement as early as May 2019. *See* Am. Compl. ¶ 94.  Second, the claim is contradicted by the record in the FINRA arbitration, which indicates that Plaintiff was aware of the BNY Defendants' purported involvement at the outset of the arbitration process in 2023. *See* Mazza Decl., Ex. 2, at 2 (noting that Plaintiff's 2023 response to CGMI's motion to dismiss argued that "[CGMI] is involved in the transaction at issue through the joint-custodial relationship with Pershing, LLC and Bank of New York Mellon"). Thus, the Court's statute of limitations analysis applies with equal weight to the RICO claims against the BNY Defendants as it does to the claims against CGMI.

this lawsuit was not filed by mid-2023, Plaintiff's RICO claims are barred by the statute of limitations.

**B.        Plaintiff's Civil RICO Claims are Barred by *Res Judicata*.**

The doctrine of *res judicata* "bars the relitigation of issues previously litigated and resolved" as well as "litigation of claims that could have been raised in the earlier proceeding, even though not actually raised." *Siegel v. Daiwa Sec. Co. Ltd.*, 842 F. Supp. 1537, 1542 (S.D.N.Y. 1994). At the motion to dismiss stage, "dismissal based on *res judicata* or collateral estoppel is appropriate where it is clear from the face of the complaint and from matters of which the Court takes judicial notice that plaintiff's claims are barred." *Bd. Of Managers of 195 Hudson St. Condo. v. Jeffrey M. Brown Assocs., Inc.*, 652 F. Supp. 2d 463, 472 (S.D.N.Y. 2009); *see also, e.g.*, *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014). The Court may take judicial notice of filings in state or federal court, as well as in an arbitration proceeding. *Purjes v. Plausteiner*, No. 15-CV-2515, 2016 WL 552959, at *4 (S.D.N.Y. Feb. 10, 2016) (collecting cases). This is true even if a plaintiff makes little or no mention of the previous litigation or arbitration in the complaint. *Id.*; *Charles Schwab & Co., Inc. v. Retrophin, Inc.*, No. 14 Civ. 4294, 2015 WL 5729498, at *7 (S.D.N.Y. Sept. 30, 2015) (taking judicial notice of arbitration award, noting that a contrary holding "would prohibit the Court from ever determining the preclusive effect of an arbitration award on a motion to dismiss, so long as the plaintiff purposely ignores mention of the arbitration in his or her pleadings"). The Court considers these extraneous documents "not for the truth of the matters asserted [within them] . . . but rather to establish the fact" that the prior proceedings and the related filings occurred. *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

To make out an affirmative defense of *res judicata*, a party must show (1) that "the previous action involved [a final] adjudication on the merits;" (2) that "the previous action involved the [parties] or those in privity with them;" and (3) that "the claims asserted in the subsequent action were, or could have been raised in the prior action." *Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000) (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). Preclusion is a matter of degree: "Whether claims asserted in a prior action are similar enough to preclude claims asserted in a subsequent action under the third prong of th[e] test depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *Mahmood v. Rsch. In Motion Ltd.*, 905 F. Supp. 2d 498, 502 (S.D.N.Y. 2012) (internal quotation marks omitted).

All three *res judicata* elements are satisfied as to the BNY Defendants and CGMI based on Plaintiff's prior, unsuccessful FINRA arbitration.

*First*, a FINRA arbitration is a final judgment on the merits for purposes of *res judicata*. As a general matter, "[i]t is well settled that [the] doctrine [of *res judicata*] serves to bar certain claims in federal court based on the binding effect of past determinations in arbitral proceedings." *Pike v. Freeman*, 266 F.3d 78, 90 (2d Cir. 2001). The FINRA arbitration, which occurred over the course of a year, allowed Plaintiff to engage in robust discovery against CGMI and included a two-day evidentiary hearing in front of a panel of neutral arbitrators. The arbitration process resulted in a detailed set of findings from the panel denying Plaintiff's claim as meritless and levying an award in CGMI's favor. *See* Mazza Decl., Ex. 2. Indeed, "the arbitration panel's findings of fact and the arguments raised by the parties, both in their briefing and at oral argument, leave no doubt that [FINRA's] dismissal was an 'adjudication on the

merits.'" *Farber v. Goldman Sachs Grp., Inc.*, No. 10 Civ. 873 (BSJ) (GWG), 2011 WL 666396, at *4 (S.D.N.Y. Feb. 16, 2011).  This Court routinely recognizes that these sorts of arbitration proceedings carry preclusive effects.  *See, e.g.*, *id.* (finding claims barred by a prior FINRA arbitration); *In re Drexel Burnham Lambert Grp., Inc.*, 161 B.R. 902, 907 (S.D.N.Y. 1993) (confirming preclusive effect of unconfirmed arbitration award); *In re Klein, Maus & Shire, Inc.*, 301 B.R. 408, 417 (Bankr. S.D.N.Y. 2003) (same).

*Second*, the parties in the instant action were represented in the FINRA arbitration (or were in privity with an entity that was represented).  Plaintiff is the same Mr. Robert C. Bass who commenced the arbitration in 2023.  Am. Compl. ¶ 27, 36, 86.  Likewise, CGMI, a Defendant here, was the respondent in the earlier FINRA arbitration.  *Id.* ¶¶ 28, 33–35, 86.  Whether the BNY Defendants were "in privity" with CGMI for purposes of *res judicata* is, facially, a closer call.  But the law is clear that in RICO cases, "alleged co-conspirators are in privity with one another for *res judicata* purposes."  *ICICI Bank Ltd., N.Y. Branch v. Doshi*, No. 19-CV-11788-LTS-SLC, 2024 WL 1242531, at *4 (S.D.N.Y. Mar. 22, 2024) (internal quotation marks omitted) (collecting cases).  The Amended Complaint repeatedly alleges that the BNY Defendants conspired with CGMI to defraud Plaintiff of his $1 billion.  Am. Compl. ¶¶ 12, 25, 57–58, 62, 129.  Therefore, although not named as respondents in the FINRA arbitration, the BNY Defendants are in privity with CGMI vis-à-vis Plaintiff's claims in this lawsuit.[6]

*Third*, any civil RICO claims that Plaintiff now asserts against CGMI and the BNY Defendants could (and should) have been raised in the FINRA arbitration.  As a threshold matter, FINRA has jurisdiction and authority to arbitrate civil RICO claims.  *See, e.g.*, *Shearson/Am.*

---

[6]     The Court's privity analysis is bolstered by allegations in the Amended Complaint that suggest Plaintiff was aware of the BNY Defendants' involvement in the alleged conspiracy as early as May 2019.  Am. Compl. ¶¶ 90, 94.  Furthermore, Plaintiff tried, unsuccessfully, to amend his Notice of Claim in the FINRA action in 2024 to add the BNY Defendants as respondents.  Mazza Decl., Ex. 2, at 4.

*Express, Inc. v. McMahon*, 482 U.S. 220, 242 (1987) (holding that civil RICO claims are arbitrable under the Federal Arbitration Act); *Moyer v. Wells Fargo*, No. 17-CV-2088, 2018 WL 4956693, at *1 (M.D. Penn. Oct. 12, 2018) (adopting report and recommendation granting motion to compel arbitration of civil RICO claim pursuant to FINRA arbitration agreement); *Knopick v. UBS Fin. Servs., Inc.*, No. 14-05639, 2015 WL 1650070, at *2 (E.D. Penn. Apr. 14, 2015) (discussing FINRA arbitration of civil RICO claims).  Moreover, the conduct at the heart of Plaintiff's Amended Complaint is the exact conduct for which he sought relief from the FINRA panel.  *Compare* Am. Compl. ¶¶ 14, 23, 25–28, 33, 86 106, 112, 131 *with* Mazza Decl., Ex. 2, at 4–7.  Plaintiff goes so far as to allege that the "evidence" underpinning the RICO claims in this case was collected, in large part, during discovery in the FINRA arbitration.  *See, e.g.*, Am. Compl.  ¶¶ 14, 25–28, 33–36, 58, 66, 86–87, 97, 106, 131, 135.  Indeed, after the FINRA panel dismissed Plaintiff's claim, Plaintiff made a last-ditch effort to amend his claim to explicitly include the civil RICO theory that he now seeks to pursue in federal court.  Mazza Decl., Ex. 2, at 3.[7]  Because Plaintiff could have pursued his civil RICO claim in the prior FINRA arbitration, and because CGMI and the BNY Defendants are in privity for purposes of the *res judicata* analysis here, Plaintiff's renewed attempt to seek relief for the same conduct that gave rise to the arbitration is barred.

---

[7]    It is of no moment that Plaintiff did not initially proceed under a civil RICO theory in the FINRA arbitration.  The transaction at issue here (*i.e.*, the alleged theft of Plaintiff's $1 billion) is the exact same transaction that was at issue before the FINRA arbitration panel; merely advancing "new" or "alternate" "legal theories [is] not sufficient to avoid the *res judicata* effect of a prior judgment." *7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*, No. 13 Civ. 981 (PGG), 2015 WL 1514539, at *25 (S.D.N.Y. Mar. 31, 2015).

11

* * *

In sum, Plaintiff's civil RICO claims against CGMI and the BNY Defendants are dismissed because they are barred by the applicable statute of limitations and the doctrine of *res judicata*.[8]

## III.    Plaintiff's Claims Based on Various Federal Criminal Laws and the United States Constitution Must Be Dismissed.

Of the six enumerated causes of action in the Amended Complaint, five are brought pursuant to federal criminal statutes: Count I (18 U.S.C. § 1341); Count II (18 U.S.C. § 1343); Count III (18 U.S.C. § 1512); Count V (18 U.S.C. §§ 1956, 1957); and Count VI (18 U.S.C. § 2320(a)).  CGMI and the BNY Defendants argue that these claims should be dismissed because the criminal statutes do not provide a private cause of action.  CGMI Mem. at 20–22; BNY Mem. at 22–23.  They are correct.  No private right of action exists for any of the statutes under which Plaintiff asserts a claim.[9]  *See, e.g.*, *Garay v. U.S. Bancorp.*, 303 F. Supp. 2d 299, 303 (E.D.N.Y. 2004) (no private cause of action for 18 U.S.C. § 1341); *Nath v. Select Portfolio Servicing, Inc.*, 732 F. App'x 85, 87 (2d Cir. 2018) (no private cause of action for 18 U.S.C. § 1343); *Zahl v. Kosovsky*, No. 08 Civ. 8308 (LTS) (THK), 2011 WL 779784, at *10 (S.D.N.Y. Mar. 3, 2011) (no private cause of action for 18 U.S.C. § 1512); *Dubai Islamic Bank v. Citibank, N.A.*, 126 F. Supp. 2d 659, 668 (S.D.N.Y. 2000) (no private cause of action for 18 U.S.C.

---

[8]    Defendants spill much ink arguing that, in any event, Plaintiff fails to adequately allege any of the necessary elements of his civil RICO claim.  *See* CGMI Mem., Dkt. 87, at 13–23; BNY Mem. at 16–22; FINRA Mem., Dkt. 85, at 10–11.  Although there is no need to address the merits of Plaintiff's civil RICO allegations given the myriad threshold defects warranting dismissal of the RICO claims, the Court is highly skeptical that Plaintiff's slipshod Amended Complaint adequately states a plausible claim against any Defendant pursuant to 18 U.S.C. §§ 1962(a), (b), (c), and/or (d).  Furthermore, Plaintiff's argument that the doctrine of *res judicata* is "void and inapplicable" is, quite simply, incorrect.  Opp. Mem., Dkt. 96, at 10, 19–23.  Contrary to Plaintiff's assertions, no federal court has "invalidated the entire arbitration and subsequent arbitration award," *id.* at 21, and there is no merit to Plaintiff's position that the arbitration agreement was somehow invalid.

[9]    Nor does a private cause of action exist under 18 U.S.C. § 1005, which Plaintiff separately references in the Amended Complaint at Paragraph 26.  *See Davis v. Countrywide Home Loans*, No. 09 CIV. 8606 (RJS) (HBP), 2010 WL 3219306, at *9 (S.D.N.Y. July 23, 2010).

§ 1956); *Ojeda v. Mendez*, No. 20-CV-3910 (EK) (LB), 2021 WL 66265, at *3 (E.D.N.Y. Jan. 7, 2021) (no private cause of action for 18 U.S.C. § 1957); *Grazette v. Bitcoin of Am., LLC*, No. 19-CV-4837 (MKB), 2020 WL 6789352, at *3 n.7 (E.D.N.Y. Sept. 30, 2020) (no private cause of action for 18 U.S.C. § 2320).  Accordingly, Counts I, II, III, V, and VI must be dismissed.

Count IV of the Amended Complaint alleges that Defendants violated the Sixth Amendment to the Constitution by "denying and depriving the Plaintiff of his lawful and protected Constitutional right to the compulsory process to compel witnesses in his favor."  Am. Compl. ¶ 129.  But this, too, fails, as each Defendant is a private entity, and Plaintiff does not allege (nor could he plausibly) that any Defendant engaged in state action.  *See, e.g.*, *Clarke v. Leading Hotels of the World, Ltd.*, No. 15-CV-0008 (JMF), 2015 WL 6686568, at *4 (S.D.N.Y. Oct. 29, 2015) (citing *United States v. Stein*, 541 F.3d 130, 146–47 (2d Cir. 2008)).  Accordingly, Count IV must also be dismissed.

## IV.    Plaintiff's Other Claims Are Not Viable.

The Amended Complaint makes offhand references to a smattering of other statutes and statutory provisions, including the Employee Retirement Security Act of 1974 ("ERISA"), *see* Am. Compl. ¶ 25, and Article 4-A of the N.Y. U.C.C., *see id.* ¶¶ 24–25, 34, 82, 92, 110, 116, 131.  To the extent Plaintiff is attempting to assert claims against one or each Defendant pursuant to these provisions, all fail as a matter of law.  The ERISA provisions that Plaintiff cites (29 U.S.C. §§ 1103–1105, 1109) are irrelevant to this action, as Plaintiff does not allege the existence of any employee retirement plan that is governed by ERISA and implicated here, which is a necessary predicate for any ERISA claim.  *See, e.g.*, *Kuhbier v. McCartney, Verrino & Rosenberry Vested Producer Plan*, 95 F. Supp. 3d 402, 409 (S.D.N.Y. 2015).

Plaintiff's scattershot references to Section 4-A of the N.Y. U.C.C. fare no better, as various of the provisions cited in the Amended Complaint are, like ERISA, wholly irrelevant to the issues alleged in the Amended Complaint or fail to provide a legal remedy altogether. *See* CGMI Mem. at 11 & n.3. Moreover, for those provisions of the N.Y. U.C.C. that *do* provide a cause of action, claims pursuant to Article 4-A are subject to a one-year statute of repose, N.Y. U.C.C. § 4-A-505, and a three-year statute of limitations, *see Banca Commerciale Italiana v. N. Tr. Int'l Banking Corp.*, 160 F.3d 90, 93–95 (2d Cir. 1998).[10] Given that the alleged transaction underpinning Plaintiff's claims took place in 2019, *see supra*, Plaintiff's time to pursue his claims under Article 4-A lapsed, at the latest, in 2022.[11] As such, any ancillary theories that Plaintiff is trying to allege pursuant to N.Y. U.C.C. provisions must be dismissed.

### V. Plaintiff's Claims Against FINRA Are Barred by the Doctrine of Arbitral Immunity.

The Amended Complaint asserts two counts against FINRA: witness tampering pursuant to 18 U.S.C. § 1512, and a deprivation of Plaintiff's constitutional rights pursuant to the Sixth Amendment. *See* Am. Compl. ¶¶ 124–131.[12] As previously discussed, these claims fail from the jump as neither 18 U.S.C. § 1512 nor the Sixth Amendment provides a private cause of action.[13]

---

[10] The BNY Defendants' assertion that N.Y. U.C.C. § 4-111's three-year statute of limitations applies to Plaintiff's claims is incorrect. *See* BNY Mem. at 16. The Amended Complaint exclusively cites Article 4-A, which is distinct from Article 4. In any event, the Second Circuit has held that the statute of limitations period for Article 4-A claims is three years. *See Banca Commerciale Italiana*, 160 F.3d at 93–95.

[11] Plaintiff attempts to evade this issue by citing a six-year statute of limitations period pursuant to N.Y. U.C.C. § 3-118. Am. Compl. ¶ 116. No dice. Wire transfers are governed by Article 4-A of the N.Y. U.C.C., not Article 3. *Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 87 (2d Cir. 2010).

[12] The remaining causes of action specifically exclude FINRA, *see* Am. Compl. ¶¶ 121, 123, 133, 134, as do many (although not all) of the allegations related to Article 4-A of the N.Y. U.C.C., *see id.* ¶¶ 3, 8, 12, and Plaintiff's civil RICO claim, *see id.* ¶¶ 2, 14, 70, 100.

[13] FINRA is not a state actor, nor does it engage in state action in the ordinary course. *See Santos-Buch v. Fin. Indus. Reg. Auth., Inc.*, 32 F. Supp. 3d 475, 484–85 (S.D.N.Y. 2014).

14

Even if those provisions did provide for a private cause of action, Plaintiff's claims against FINRA would be dismissed for an additional, independent reason: they are barred by the doctrine of arbitral immunity. Arbitral immunity "protect[s] decision-makers from undue influence and protect[s] the decision-making process from reprisals by dissatisfied litigants." *New England Cleaning Servs., Inc. v. Am. Arbitration Ass'n*, 199 F.3d 542, 545 (1st Cir. 1999). As such, quasi-judicial arbitrators, as well as their commercial sponsoring organizations (*e.g.*, FINRA), are "entitled to immunity for all functions that are integrally related to the arbitral process." *Austern v. Chicago Bd. Options Exch., Inc.*, 898 F.2d 882, 886 (2d Cir. 1990); *see also Yadav v. N.Y. Stock Exch., Inc.*, No. 91 Civ. 2256 (CSH), 1992 WL 197409, at *3 (S.D.N.Y. Aug. 4, 1992) ("[T]he doctrine of arbitral immunity extends to boards, exchanges and other entities that sponsor and administer arbitrations.").

The Amended Complaint, and much of Plaintiff's responsive briefing, is long on rhetoric and short on pertinent facts. Plaintiff's allegations against FINRA are exceedingly vague and somewhat indiscernible. But whatever they may be, the claims against FINRA can only relate to its role as the sponsor of Plaintiff's initial, unsuccessful arbitration against CGMI. *See, e.g.*, Am. Compl. ¶¶ 33 (alleging that FINRA refused to produce an agreement between CGMI and the BNY Defendants during the arbitration), 34–35 (alleging that FINRA violated Plaintiff's constitutional rights during the arbitration), 36 (alleging that FINRA conspired with CGMI and the BNY Defendants during the arbitration), 86 (same). To the extent that Plaintiff takes issue with FINRA's ministerial, administrative, or discretionary administration of his prior arbitration proceeding, FINRA is wholly insulated from civil liability. *See Austern*, 898 F.2d at 886. Plaintiff's Consolidated Opposition provides no meaningful rebuttal to this point.[14] As such,

---

14      The Amended Complaint also suggests that FINRA did not have jurisdiction to hear the arbitration and thus should have independently referred Plaintiff to a federal court. Am. Compl. ¶ 35. Plaintiff's Consolidated

FINRA is not an appropriate party to this action and any claims against FINRA must be dismissed.

## VI.    This Action is Dismissed with Prejudice.

District Courts generally grant *pro se* plaintiffs leave to amend their complaint at least once.  Leave to amend is not required, however, where it would be futile.  *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42–43 (2d Cir. 1988). Moreover, the Court has the inherent power to dismiss a suit with prejudice where there is clear and convincing evidence establishing that a party has committed a fraud on the Court by falsifying evidence.  *See Shangold v. Walt Disney Co.*, 275 F. App'x 72, 73–74 (2d Cir. 2008) (summary order); *McMunn v. Memorial Sloan-Kettering Cancer Ctr.*, 191 F. Supp. 2d 440, 461–62 (S.D.N.Y. 2002).

Plaintiff has a pattern of bringing (what can only be described as) fanciful suits against financial institutions seeking the return of exorbitant sums of money that have allegedly disappeared from various of his bank accounts.  *See, e.g.*, *Bass v. United States*, No. 24-1079, 2024 WL 5153976 (2d Cir. Dec. 18, 2024) (summary order) (describing Mr. Bass's unsuccessful effort to seek the return of $3.5 million he had allegedly deposited at Swiss bank Wegelin & Co.).  Further still, the FINRA arbitrators determined that Plaintiff had falsified evidence in support of his claim against CGMI before dismissing the claim outright.  Mazza Decl., Ex. 2, at 4.  Plaintiff opts for the same strategy here, attaching to his Consolidated Opposition what certainly appears to be a fabricated email from an employee of the Depository Trust & Clearing

---

Opposition, too, seems to suggest that arbitral immunity does not apply because FINRA allegedly lacked jurisdiction to oversee the arbitration.  *See* Opp. Mem. at 10, 20–22, 27–28. This argument, which FINRA characterizes as "unsupported and nonsensical," FINRA Mem. at 9 n.7, has no bearing on the Court's analysis, as the arbitral immunity unquestionably "extend[s] to cases where the authority of an arbitrator to resolve a dispute is challenged." *Tamari v. Conrad,* 552 F.2d 778, 780 (7th Cir. 1977).

16

Corporation.  *See* Opp. Mem., Ex. 3, Dkt. 96-3; *see also* Decl. of Adam Kauff, Dkt. 103 ("Kauff Decl.").[15]  This conduct is not only egregious but sanctionable.

In all events, no revisions to the Amended Complaint would enable Plaintiff to hurdle the statute of limitations, *res judicata*, and various other issues that create a barrier to his claims. Because the defects in the Amended Complaint cannot be cured by further amendment, and because there is clear and convincing evidence that Plaintiff has attempted to defraud the Court by falsifying evidence in support of his ill-fated claims, the Court will not afford Plaintiff another bite at the apple.

**CONCLUSION**

For the foregoing reasons, the Motions to Dismiss are GRANTED and the Amended Complaint is DISMISSED WITH PREJUDICE.  The Clerk of Court is directed to terminate the open motions at Dkts. 84, 86, and 90 and close this case.

**SO ORDERED.**

Date:  **November 25, 2025**
       **New York, New York**

                                                         **VALERIE CAPRONI**
                                                         **United States District Judge**

---

[15]     The Kauff Declaration, which is discussed in CGMI's reply papers, Dkt. 102, at 7–9, outlines the various errors in Plaintiff's exhibit, including (i) use of an incorrect name for the purported sender of the email, and (ii) misidentification of the purported sender's organizational affiliation.  Kauff Decl. ¶¶ 2–6.  These idiosyncratic errors are common across Plaintiff's submissions, both to this Court and to the FINRA arbitrators.  *Id.* ¶ 6.